UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HECTOR COLON,<br>　　　　Plaintiff<br><br>　　v.<br><br>KILOLO KIJAKAZI,[1]<br>*Commissioner of Social Security*<br>　　　　Defendant | CIVIL NO. 4:21-CV-0410<br><br><br>(ARBUCKLE, M.J.) |

MEMORANDUM OPINION

I.　INTRODUCTION

Plaintiff Hector Colon, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED.

II.     BACKGROUND & PROCEDURAL HISTORY

On May 16th, 2017, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 35; Doc. 12-2, p. 36). In these applications, Plaintiff alleged he became disabled as of January 1, 2018, when he was 52 years old, due to the following conditions: "back pain, hands, legs[;] stent on the [a]orta vein[;] diabetes[;] high blood pressure[;] and problems with intestines".[2] (Admin. Tr. 356; Doc. 12-7, p. 20). Plaintiff alleges that the combination of these conditions affects his ability to lift, stand, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, follow instructions, and use his hands. (Admin. Tr. 389; Doc. 12-7, p. 53). Plaintiff has an 11th grade education. (Admin. Tr. 357; Doc. 12-7, p. 21). Before

---

[2] Plaintiff amended his onset date at the administrative hearing. (Admin. Tr. 69; Doc. 12-2, p. 70).

the onset of his impairments, Plaintiff worked as a minister/pastor in a church, and did "[t]emp work." (*Id.*).

On September 5, 2017, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 125-138; Doc. 12-4, pp. 2-15). On October 26, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 141; Doc. 12-4, p. 18).

On both November 30, 2018 and December 6, 2019, Plaintiff, assisted by his counsel, appeared and testified during hearings before Administrative Law Judge Theodore Burock (the "ALJ"). (Admin. Tr. 66; Doc. 12-2, p. 67); (Admin. Tr. 54; Doc. 12-2, p. 55). On April 8, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 29; Doc. 12-2, p. 30). On June 2, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 245; Doc. 12-5, p. 44). On January 28, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 12-2, p. 2).

On March 5, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court

"reverse the decision of the defendant; and find that plaintiff is entitled to disability benefits under the provisions of the Social Security Act; or, in the alternative, reverse the decision of the defendant and remand the case, with instructions, for a further hearing; and further provide such other relief, including an award of attorney's fees under the Equal Access to Justice Act, as is fair, just and equitable." (Doc. 1, p. 2).

On June 4, 2021, the Commissioner filed an Answer. (Doc. 11). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 11). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 23), and Plaintiff's Reply (Doc. 28) have been filed. This matter is now ripe for decision.

III. STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff

is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[3] To

---

[3] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on April 3, 2020.

satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112,

121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the

ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.  DISCUSSION

    A.  THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his June 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2023. (Admin. Tr. 37; Doc. 12-2, p. 38). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between January 1, 2018 (Plaintiff's alleged onset date) and December 31, 2023 (Plaintiff's date last insured) (the "relevant period"). (Admin. Tr. 37-38; Doc. 12-2, pp. 38-39). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): spondylosis of the lumbosacral spine, degenerative disc disease of the lumbar spine,

spondylosis of the cervical spine, coronary artery disease, diabetes mellitus, bilateral carpal tunnel syndrome and polyperipheral neuropathy. (Admin. Tr. 38; Doc. 12-2, p. 39). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 40; Doc. 12-2, p. 41).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> except with frequent use of the upper extremities bilaterally for all functions, occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no exposure to ladders, ropes, or scaffolding or other hazards, such as heights and machinery.

(Admin. Tr. 41; Doc. 12-2, p. 42).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in his past relevant work as a case aide. (Admin. Tr. 45; Doc. 12-2, p. 46).

In his supporting Brief, Plaintiff identifies four errors that he believes warrants relief. They are:

> 1. The ALJ erred in relying upon the vocational witness' classification of the plaintiff's past relevant work as a "case aid." All of the vocational witness's testimony was based on this erroneous conclusion and thus

the witness' testimony is based on an improper foundation and cannot support the decision.

2. The ALJ improperly weighed the subjective evidence of the plaintiff's limitations by failing to give great weight to that testimony without providing medical evidence which refuted that subjective evidence.

3. The ALJ erred in failing to include all of the plaintiff's limitations in formulating his assessment of the plaintiff's residual functional capacity and in his hypothetical questions to the vocational expert when he made an improper provision for the plaintiff's use of his upper extremities and inadequate consideration of his limits to standing and walking. The ALJ also misstated the evidence to reach his conclusions on the RFC.

4. Remand is required because the appointment of Andrew Saul as a single Commissioner of Social Security who is removable only for cause and serves a longer term than the president violates separation of powers, rendering the decision in this case by an ALJ and Appeals Council judges, who derived their authority from Mr. Saul constitutionally defective.

(Doc. 18, pp. 13-14).

To decide this case, I only need to discuss the first alleged error: whether the ALJ erred at step 4.

    B.    WHETHER THE ALJ ERRED IN CONCLUDING PLAINTIFF COULD PERFORM HIS PAST WORK

Plaintiff contends that the ALJ and VE erred when they labeled Plaintiff's past relevant work to be that of a case aide. (Doc. 18, pp. 14-15). Plaintiff asserts that his past job as a pastor/clergyman is completely different than that of a case aide. (*Id.* at

p. 17). Thus, Plaintiff argues that "[a]ll of the ALJ's conclusions are based on the plaintiff being able to return to a job he never had." (*Id.* at p. 19).

The Commissioner disagrees and argues that the ALJ relied on VE testimony who reasonably opined Plaintiff's past work is that of a case aide, as Plaintiff did not have the training requirements for his past work to be classified as a pastor, under the Dictionary of Occupational Titles ("DOT"). (Doc. 23, pp. 27-28). Additionally, the Commissioner contends that Plaintiff has not articulated "specific challenges to the expert's testimony regarding proper DOT classification for his past work." (Doc. 23, p. 30). On this point, I agree with Plaintiff, the ALJ's step 4 decision is not supported by substantial evidence. Before I discuss my reasoning, I will briefly discuss an ALJ's obligations at step 4.

At step 4, an ALJ analyzes whether a claimant can return to their past relevant work. 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965. To assist in that inquiry, the ALJ can solicit the opinion of a VE. When an ALJ is questioning the VE at step 4, "the ALJ is required to (1) ask, on record, whether vocational expert's (VE) testimony is consistent with the Dictionary of Occupational Titles (DOT), (2) elicit a reasonable explanation where the inconsistency does appear, and (3) explain in its decision how conflict was resolved." *Moody v. Comm'r of SSA*, No. 15-8319, 2016 WL 7424117, at *26 (D.N.J. Dec. 23, 2016) (citing *Zirnsak v. Colvin*, 777 F.3d 607 (3d Cir. 2014)).

Inconsistencies do not mandate remand so long as "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.*

As to the first *Zirnsak* factor, the ALJ satisfied his duty, as he asked the VE if his testimony was consistent with the DOT. (Admin. Tr. 87; Doc. 12-2, p. 88). The VE answered in the affirmative. (*Id.*). As to the second *Zirnsak* factor, the ALJ received an explanation on why the VE classified Plaintiff's past work as a case aide instead of a pastor. However, I believe that this explanation, and the ALJ's curt consideration of it is not based on substantial evidence.

The ALJ and Plaintiff had the following exchange at the administrative hearing:[4]

> Q: . . . What do you do [at the church]?
> A: I'm the leader. I work with the people; preach sometimes in the months, three, four times a month. I'm teaching sometimes.
> Q: What was that –
> A: I'm the senior Pastor. I preach three or four times . . . a month
> . . .
> Q: Do you do any counseling of the parishioners?
> A: When some, someone asks for it, yes.

---

[4] In the administrative transcript, the Court is unsure at times whether Plaintiff or his interpreter is speaking. This confusion could have been easily avoided if the transcript contained identifiers for the speakers. *See* Guide to Judiciary Policy, Volume 6, § 520.40.10 ("All speakers must be properly identified throughout the transcript, initially by their full name, thereafter by the following designations or courtesy titles . . . . [including identifying the witness as "THE WITNESS" and the interpreter as "THE INTERPRETER"]")

Q: Aside from preaching and counseling, do you do anything else?
A: No.

(Admin. Tr. 74-75; Doc. 12-2, pp. 75-76).

Later, Plaintiff's counsel clarified Plaintiff's past work with him:

Q: And when you say, when you say counseling, correct me if I'm wrong, when people come to you with problems, you listen to them and you give them your opinion. Is that correct?
A: I'm a religious counselor, and I talk to them about the Bible, because that is the only way I can counsel them. But if I see that there is something that is beyond my knowledge, something that isn't even legal, I would just send them to a professional.

(Admin. Tr. 84; Doc. 12-2, p. 85).

Towards the end of the hearing, the ALJ questioned the VE on Plaintiff's past work:

Q: Can you summarize his past work in terms of skill level and exertional level.
A: Well, what I used was case aid, which is someone who provides assistance to people in the community, not really counseling but assist them with needs such as if they need referrals to other agencies or need assistant with personal problems. And that seems the closest thing, because at – the Pastor assistant is an SVP: 6 and it requires some additional training that he didn't get to complete, he said. So, the case aid more – that matches his stuff.
Q: What would you put the SVP as?
A: Three. Yeah, that would be better than – and it's S – it's DOT 195.367-010, an SVP 3, customary light and actually light. Report the full range of these jobs are light.
Q. Okay.

(Admin. Tr. 85; Doc. 12-2, p. 86).

This cursory acceptance of the VE's testimony is not based on substantial evidence because there is no apparent link between Plaintiff's duties as a pastor and that of a case aide. A case aide:

> Performs community contact work on simpler aspects of programs or cases and assists in providing services to clients and family members, under close and regular supervision and tutorage of CASEWORKER (social ser.) 195.107-010 or CASEWORK SUPERVISOR (social ser.) 195.137-010. Assists in locating housing for displaced individuals and families. Monitors free, supplementary meal program administered by agencies for children and youth from low-income families to ensure cleanliness of facility and that eligibility guidelines are met for persons receiving meals. Assists elderly clients in preparation of forms, such as tax and rent refund forms. Accompanies elderly clients on visits to social, charitable, and government agencies to assist clients with their problems. Submits to and reviews reports and problems with superior. May be designated according to clients serviced as Senior Service Aide (social ser.); Youth Nutritional Monitor (social ser.).

DOT Code 195.367-010.

On the other hand, Plaintiff described his job as a preacher, who preaches three to four times a month. (Admin. Tr. 74-75; Doc. 12-2, pp. 75-76). When asked if he also does counseling, he described himself as a religious counselor, who bases his advice on the Bible. (Admin. Tr. 84; Doc. 12-2, p. 85). This description of Plaintiff's past job appears to have no connection to that of a case aide. While Plaintiff performs some religious counseling, that type of counseling is not contemplated anywhere in the case aide description. And while there might be a good reason for the ALJ to classify Plaintiff's past work as a case aide, at a minimum

the ALJ should have addressed his discrepancy in his opinion. *See Moody*, 2016 WL 7424117, at *31 (remanding case where ALJ did not resolve difference between plaintiff's actual past work and the mischaracterized work opined by VE); *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 110 (3d Cir. 2006) ("The ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous.").

As to the third *Zirnsak* factor, the ALJ did not explain how he resolved the conflict, as he simply adopted the VE testimony without question. Thus, the ALJ should have identified and explained the stark differences between Plaintiff's proffered past work, and that of a case aide.

Additionally, the Commissioner asserts that despite any perceived error, the ALJ's opinion should be affirmed because Plaintiff failed to object to the VE's testimony during the administrative hearing. (Doc. 23, p. 29 n.21). I disagree. Despite the general rule that issues should not be heard for the first time on appeal, this issue is not jurisdictional, and the Court must "scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 n.3 (3d Cir. 1983) (citing *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981))

(analyzing the merits of an argument even if it was not raised before the ALJ or the district court).

Finally, the Court notes that there appears to be a serious discrepancy between the ALJ's findings in step 1 and step 4 of his decision. This discrepancy implies that Plaintiff might not have any past relevant work to begin with. I'll explain.

At step 4, the ALJ must decide if Plaintiff has any past relevant work that he can perform. Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960 (b)(1). In turn, substantial gainful activity (occasionally "SGA") is:

> work activity that is both substantial and gainful:
>
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 416.972(a)-(b); 20 C.F.R. §§ 404.1572(a)-(b).

In this case, at step 1, the ALJ explained:

> **2. The claimant has not engaged in substantial gainful activity since January 1, 2018, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).**

> The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity ("SGA"). The claimant testified that he works as a pastor at his church up to 10 hours per week earning $27.00 an hour (Claimant Testimony 12/6/2019). The undersigned notes that this work was previously performed at the SGA level but was reduced to non-SGA earnings after the amended onset date. These earnings equate to $270 per week or $1080 per month and are just below the monthly SGA thresholds of $1220 in 2019 and $1260 in 2020. Therefore, the claimant has not engaged in SGA.

While explaining that Plaintiff has not engaged in SGA, the ALJ explained at

step 4:

> **6. The claimant is capable of performing past relevant work as a case aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**
>
> The claimant has past relevant work as a case aide, DOT #195.367-010, a semi-skilled, light occupation with an SVP of 3 and actually performed at light by the claimant. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. This finding is supported by the vocational expert's response to the Vocational Interrogatory (Exhibit 19E). The undersigned notes that this response was based on a hypothetical that the claimant could not read or write English but that he could speak and understand English. Given the claimant's testimony that his current work in this capacity is performed in a predominantly Spanish speaking church, the claimant would be able to perform his past relevant work as actually performed whether or not he could speak and understand English as he previously has performed this job with language skills

which he possesses. In short, the claimant's language skills do not present an impediment to his performance of his past relevant work.

So, past relevant work must be performed at a substantial gainful activity level. But, at step 1, the ALJ found that Plaintiff did not perform work at the SGA level, but yet found him able to perform past relevant work. The ALJ does not explain this discrepancy and it broadly affects any step 4 findings that the ALJ made.[5] *See Baldwin v. Barnhart*, No. 5:04-cv-0040, 2004 WL 2203544, at * 5 (W.D. Va. Sept. 29, 2004) (remanding where "there is a discrepancy between the Law Judge's finding that plaintiff's employment . . . amount[s] to substantial gainful activity and the Law Judge's finding that Ms. Baldwin retains sufficient functional capacity to return to her past relevant work.").

In sum, the ALJ failed to explain the discrepancy between Plaintiff's actual past job as a pastor and a case aide. Additionally, the ALJ failed to explain the discrepancy between why he found Plaintiff did not perform work at the SGA level, but yet found Plaintiff had the ability to return to past relevant work. This case will be remanded back to the Commissioner so she can explain these discrepancies.

---

[5] Additionally, Plaintiff stated that he has done other jobs other than a pastor within the past 15 years. *See* (Admin. Tr. 357; Doc. 12-7, p. 21) (Plaintiff stating he did "temp work" at a "warehouse" in 2012 for 5 hours a day, 5 days a week); (Admin. Tr. 266; Doc. 12-6, p. 21) (indicating Plaintiff had FICA earnings from 2003-06 and from 2011-17). However, the ALJ does not discuss this.

V.  CONCLUSION

Accordingly, I find that that Plaintiff's request for the Commissioner's decision be overturned and be remanded with instructions be granted as follows:

(1) The final decision of the Commissioner will be VACATED.

(2) This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be issued in favor of Hector Colon.

(4) An appropriate order will be issued.

Date: August 25, 2022                          BY THE COURT

                                                          *s/William I. Arbuckle*
                                                          William I. Arbuckle
                                                          U.S. Magistrate Judge